IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### FEBRUARY TERM, 1880.

---

### WALLACE v. JOHN SILSBY AND HENRY MARTIN.

1. A grantee is chargeable with knowledge of the title of his grantor as it exists in unbroken sequence on the records in the clerk's office.
2. Where the registry showed that all the ores on the tract conveyed had been previously conveyed away by the grantor of the plaintiff, and it was shown in the pleadings that before the plaintiff took his title, such prior grantee had reconveyed all such ores back again to the plaintiff's grantor, who, at the same time, had conveyed back to such grantee the zinc ores which were the subject of the controversy, and that both such conveyance and reconveyance were unknown to the plaintiff when he took his title—*held*, that the plaintiff could not repudiate part of such transaction, leaving the conveyance to his grantor stand, and avoiding the reconveyance.
3. Such conveyance and reconveyance are one transaction, and cannot be separated into parts, and the instantaneous seizin vested by the conveyance and divested by the reconveyance could not enure to the benefit of the plaintiff.

---

Trespass *quare clausum fregit*, &c., and there digging and carrying away certain zinc ore, &c.

VOL. XIII.        A             1

Wallace v. Silsby and Martin.

There were certain special pleas which, as a justification, attempted to show, by the statement of certain facts, that the ore in question was the property of "The New Jersey Zinc and Copper Mining and Manufacturing Company," and which company had the right to enter upon the *locus in quo*, and to take said ore therefrom. There was no connection shown between this company and the defendants. The facts pleaded to make out this title, and to show the real situation of the parties, are as follows, viz.: that the plaintiff, Wallace, derived his title to the premises in fee in the year 1856, from one Samuel Fowler, who, on the 10th of September, 1847, had conveyed in fee to the said "The New Jersey Zinc and Copper Mining and Manufacturing Company " " all the zinc, copper, lead, gold and silver ores, and such ores of iron as might be commingled or connected with the zinc or copper located in or upon or under the said close," giving the right to enter and mine, &c. This deed was recorded on the 29th of December, 1847. In 1847, Samuel Fowler conveyed in fee the premises, without reserving the ore, to John Fowler, and who, in like manner, in 1849, reconveyed them to the said Samuel. These deeds were recorded, the first in 1849, the second in 1850. On the 6th of June, 1853, the zinc company reconveyed to said Samuel Fowler all the estate in the ores which it had derived from him under his deed of the 10th of September, 1847, and on the same day, by a deed of the same date, Samuel Fowler reconveyed to the company. The plea alleges that these two last deeds were for the purpose of correcting a mistake in the original deed, which was intended to convey only the zinc ore, but which, from inadvertence, had embraced certain other ores.

Argued at November Term, 1879, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE, VAN SYCKEL and DIXON.

For the plaintiff, *John Linn.*

For the defendants, *Robert Gilchrist.*

Wallace v. Silsby and Martin.

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This suit is for breaking and entering the plaintiff's close, and for digging up and taking therefrom certain zinc ore. The pleas demurred to are attempts to justify this act. In form they are special traverses, and, consequently, in testing their sufficiency, we look at the facts stated in the inducements. That the substance of the inducement is the proper standard wherewith to measure the legal effect of the defence thus interposed, is a subject discussed in the brief of the counsel of the plaintiff, but as I consider the doctrine unquestionable, it is assumed by me as a premise.

The defence thus presented is that the ore in question was not the property of the plaintiff, but belonged to a certain corporation, formerly known as " The New Jersey Zinc and Copper Mining and Manufacturing Company." It is stated that the plaintiff took his title, in the year 1856, from one Samuel Fowler, who, on the 10th of September, 1847, had conveyed in fee to the company just mentioned " all the zinc and copper, lead, gold and silver ores, and such ores of iron as might be commingled or connected with the zinc or copper located in or upon or under the said close," together with the right to mine and take away such ores, &c. This deed was recorded. It further appears that afterwards, in the year 1847, Samuel Fowler conveyed, without reservation, the entire premises to one John Fowler; but such deed is immaterial in this inquiry, as the latter reconveyed the same to him, in the year 1849.

Therefore, it will be noted that if the statements in the plea had stopped at this point, an indisputable title to these ores had been shown to reside in this corporation. Samuel Fowler was the grantor of the plaintiff, in the year 1856, and the registry in the county clerk's office manifested that, about nine years before, such grantor had conveyed away to " The New Jersey Zinc and Copper Mining and Manufacturing Company," in fee, the ores which are in dispute. This prior deed was duly recorded at the time of the second conveyance,

and as it stood in the direct line of the title through which the plaintiff claimed, he is chargeable with full knowledge of its existence. I find in the brief of the counsel of the defendants quite an elaborate discussion of the proposition that, from this state of the record, a knowledge of this prior conveyance is imputable to the plaintiff; but it seems to me that it is entirely unnecessary to vindicate the point, either by argument or authority. On any other hypothesis, the registration of conveyances would be an idle form. That the title of the grantor, as it appears in regular sequence and unbroken continuity on the record, is a fact within the consciousness of the grantee at the time that he accepts his conveyance, is a conclusion *juris et de jure*. This is a doctrine which I do not think has ever been brought into doubt in this state, and, in this case, it is not, in any respect, gainsaid by the counsel of the plaintiff. He makes his contest upon the ground which I shall now proceed to explain.

Besides the conveyances already mentioned, there are two other deeds stated in the plea. I have said that the plaintiff acquired his title, in the year 1856, from Samuel Fowler. Just prior to this, "The New Jersey Zinc and Copper Mining and Manufacturing Company," on the 6th of June, 1853, conveyed to this Samuel Fowler, in fee, all the ores which he had granted to said corporation, by his deed, in 1847; and on the same day, by his deed, he reconveyed all the zinc ore now in question to the company. This conveyance and this reconveyance were not recorded at the time the plaintiff got title, and the plea avers that he had no notice of the transaction. The object of such a course of conveyancing is fully explained in the plea, from which it appears that Samuel Fowler claimed that, by his original deed, executed, as above stated, in the year 1847, he had, by inadvertence, conveyed to the zinc company other ores than the zinc ores, and to correct that error, this transfer and retransfer were resorted to. Receiving these instruments according to their intrinsic force, they are beneficial to the plaintiff, for their admitted operation is to incorporate with the land purchased by him

·certain ores which he then supposed his grantor did not own. But, not satisfied with this unexpected accretion, he further ·claims the zinc ores in question, and it is this claim that has brought on this controversy.

The point made is a technical one, for the contention on the part of the plaintiff is that he can exact the benefit of the ·conveyance of all the ores by the zinc company to his grantor, Samuel Fowler, and also repudiate the reconveyance ·of the zinc ores by the latter to the former, for the reason that such reconveyance was not on record when he acquired his own title. Inasmuch as neither of these last-mentioned ·conveyances was then recorded, and the demurrer admits the ·entire ignorance of the plaintiff with respect to either of them, :and as the deed to the zinc company, in 1847, was then recorded, showing that the corporation was the owner of all the ores, it is obvious that the designation of this position as :a technical one is entirely justified; nevertheless, the plaintiff is entitled to stand securely upon it, if he can establish his position as a legal one. The question is, how has he succeeded in this respect?

Upon reflection, it seems to me that, in this endeavor, he has plainly failed. As the two deeds in question were unrecorded, and their existence was unknown to the plaintiff when he acquired his estate, no one will deny that it was competent for him to repudiate, altogether, both those instruments. In such a position, his rights could not be affected by the acts of his grantor, of which, when his interests became fixed, he had no notice, either express or implied. So it is clear that he could take to himself such rights as inhered in the lands conveyed to him, and which were within the scope of his grant, ·even though such rights had been acquired by his grantor, or other privies in estate, by a deed unpromulgated by being put upon the record, or otherwise. But this is not that case. The ·difficulty of the plaintiff's position is that he is seeking not to ·disallow a particular unknown transaction affecting his title, but to disallow only a part of such transaction; he wishes to halve the affair of the conveyance and reconveyance, letting

the former stand and the latter fall. He is not in a situation to explode the entire matter, for to do so would bring into play the deed to the company, of 1847, which would divest him of every particle of title to the ore in question. The effort, therefore, is to divide into parts the act of the conveying and reconveying of this property, and to regard it as two substantive transactions, and herein is the flaw in the legal position of the plaintiff. In legal contemplation, this transfer and retransfer of this ore were but a single transaction, which cannot be disintegrated for the purpose of annexing to its several parts qualities that would not belong to them except in an uncombined condition. That the transaction is one and not several, appears from its object, and also from the express averments of the plea. That two instruments were made use of, cannot alter the nature of the thing done, for, in such matters, the intention of the parties is everything and the form nothing. The purpose here was to revest in Samuel Fowler all the ores except the zinc ores; this could have been effected by a conveyance of such ores from the company to him. The same end has been reached by the circuity of the present conveyances; and, as by the use of the former method, no pretence of a claim on the part of the plaintiff could have arisen, why should a difference exist when the same intention has been executed in a changed form? If the law regarded only the outward figure and mode of this business, the contention of the plaintiff might doubtless be sustained; but such is not the case. It is true that, by the conveyance of this zinc, in connection with the other ores, by this corporation, to Samuel Fowler, the grantor of the plaintiff, a seizin was vested in him; but, as it was the intention of the parties to put such seizin in him for a particular purpose, and only for an instant, it could not enure to the benefit of the plaintiff. That such a legal investiture of the possession should have any effect except such as the parties designed, would be very unreasonable. Nor do I find that any greater effect has ever, in analogous cases, been imparted to such a proceeding. Whenever a momentary seizin has been given to accomplish a present

object, the effect of such seizin has been limited to the accomplishment of the object. The questions which have arisen under claims of dower, afford apt illustrations of the doctrine. In all such instances, it has been, I believe, invariably held that a seizin *in transitu* to subserve a particular purpose, will not entitle the widow to dower, in contravention of such purpose. Chancellor Kent, in Vol. IV., p. 38 of his Commentaries, expounds the subject in terms very applicable to the present purpose. He says: "A transitory seizin for an instant, when the same act that gives the estate to the husband conveys it out of him, as in case of a conusee of a fine, is not sufficient to give the wife dower. The land must vest in the husband beneficially for his own use, and then, if it be so vested, but for a moment, provided the husband be not the mere conduit for passing it, the right of dower attaches. Nor is the seizin sufficient when the husband takes a conveyance in fee, and, at the same time, mortgages the land back to the grantor, or to a third person, to secure the purchase money, in whole or in part. Dower cannot be claimed as against the rights under that mortgage. The husband is not deemed sufficiently or beneficially seized by such an instantaneous passage of the fee in and out of him, to entitle his wife to dower as against the mortgagee, and this conclusion is agreeable to the manifest justice of the case." It is obvious that all the considerations here given for the existence of this doctrine, in its application to dower, should be equally potent in their bearing on the law of the case now under consideration, for here, as in the case of the momentary seizin in the husband, the grantor of the plaintiff was not beneficially seized, even for a moment, in the ore forming the subject of litigation. In the case of the dowress, the law looks beyond the mere form, which, technically, is in her favor, to the purpose for which such form is used, and departing from the letter of the transaction, fulfills the intention. This same doctrine, with respect to dower, is recognized by this court in the case of *Griggs* v. *Smith*, 7 *Halst.* 22.

In this line of decisions, there are also some which exem-

plify the principle referred to, and whose analogy, in point of form, is quite close to the present case. Thus, in *McCauley* v. *Grimes*, 2 *Gill & J.* 318, upon a certain person's death, it was found that part of his estate had been conveyed to his son A., and the object being to divide the estate of the father among his children, it was agreed that A should convey the land to B, who, at the same time, executed bonds, secured by a mortgage on the property, to the children, respectively, for the payment of their shares. This being done, it was held that the wife of B could claim dower in the land, only subject to this mortgage. In this case, the intention of the parties was put into effect by means of the various instruments that were executed, and the seizin that was created, was made strictly subservient to such intention. So the decision in the case of *Moore* v. *Esty*, 5 *N. H.* 479, is to the effect that where a father conveyed an estate in fee to his son, who, at the same time, gave back to the father a deed for the same land, to hold for his life, and which deed contained a recital that if the grantor performed the condition of a certain bond, the grantee should not enter, it did not give the son such a seizin as entitled his wife to dower, he having died before his father. Here, again, we perceive that the seizin, so to speak, merely feeds the intention. The judgment in *Sneyd* v. *Sneyd*, 1 *Atk.* 441, was rendered on the ground of the same principle.

Another series of illustrations of the same doctrine, will be found in the cases relating to the lien acquired by the vendor, on the land sold for the purchase money. Thus, in the case of *National Bank of the Metropolis* v. *Sprague et al.*, 5 *C. E. Green* 13, it was decided that such a lien would override a mechanics' lien put upon the property between the date of the contract to purchase and the execution of the conveyance and mortgage. To the same effect are the judgments in *Lamb* v. *Cannon*, 9 *Vroom* 362; *Story* v. *Van Deursen*, 8 *C. E. Green* 369, and *Macintosh* v. *Thurston*, 10 *C. E. Green* 248. And it will be noticed that these cases were not thus decided by reason of the seventy-seventh section of the act respecting conveyances, (*Rev.*, *p.* 167,) and which gives pre-

-ference to a purchase money mortgage over previous judgments against the grantee, for the question was as to the effect of a mechanics' lien, and not as to the force of a judgment upon the rights of the vendor. Nor can there be any question that this provision of the statute just referred to is merely declaratory of the common law rule, which would undoubtedly elevate a mortgage given by the vendee to the vendor, to secure the unpaid purchase money, and executed at the time of the conveyance, above the reach of judgments then existing against such vendee. I do not find that it has ever been held, but that, to this extent, at least, the natural equity of the vendor will be respected and enforced. And yet, in such transactions, there is a momentary seizin in the vendee, between the execution of the conveyance and the execution of the mortgage, upon which, in strict theory, if we fix our eyes upon the form and avert them from the purpose in view, the lien of then existing judgments against such vendee would fasten. That such evanescent seizins will not avail in behalf of creditors and others, in frustration of the object for which they are created, and this upon general rules, and independent of any statutory regulation, will be found fully exemplified in the following cases: *Curtis* v. *Root*, 20 *Ill.* 53; *Chickering* v. *Lovejoy*, 13 *Mass.* 51; *Clark* v. *Munroe*, 14 *Id.* 351; *Ahern* v. *White*, 39 *Md.* 409; *Co. Litt.* 31 *b*; *Stow* v. *Tifft*, 15 *Johns.* 458; *Pomeroy* v. *Latting*, 15 *Gray* 435.

The result thus indicated, therefore, is that upon the merits of the present case, as such merits have appeared in the pleadings and in the arguments of the respective counsel, the plaintiff has no legal claim to the ores in question.

This conclusion, however, does not entitle the defendants to a judgment on their demurrers, for their pleas are obviously insufficient. They merely show title in this zinc company, but fail to make out any connection between such corporation and these defendants. As the pleas admit that the general title to the *locus in quo* was in the plaintiff, and, from the nature of the act done by them, that they entered upon such close, they fail to justify such conduct when they set up noth-

ing but a title in a stranger, to the ore taken by them. On the record as it stands, the plaintiff must have judgment in his favor.